1
2
3
4
5
6                              UNITED STATES DISTRICT COURT
                              WESTERN DISTRICT OF WASHINGTON
7                                        AT TACOMA

8   JAMIE ZIMMERMAN et al.,                    Case No. 3:22-cv-05960

9                          Plaintiffs,         ORDER GRANTING IN PART AND
                                               DENYING IN PART MOTION TO
10         v.                                  DISMISS

11  PEACEHEALTH et al.,

12                         Defendants.

13

14                          I.      INTRODUCTION

15         In August 2021, as the Delta variant of the COVID-19 virus spread rapidly around the

16  world, Defendant PeaceHealth began requiring all its caregiver employees to receive full

17  vaccination against COVID-19. A short time later, both Washington State and the federal

18  government instituted similar so-called "vaccine mandates" for healthcare workers. Both the

19  state and federal mandates, however, allowed employers to consider requests for accommodation

20  based on sincerely held religious beliefs, consistent with state and federal laws requiring

21  employers to reasonably accommodate religious practices by their employees when doing so

22  does not create undue hardship. PeaceHealth, too, allowed its employees to submit requests for

23  religious accommodation.

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Plaintiffs are 50 current and former PeaceHealth employees who allege primarily that they requested accommodation for their sincerely held religious objections to receiving vaccination against COVID-19; that PeaceHealth could have reasonably accommodated them in a way that allowed them to continue working, such as by requiring them to take additional protective measures or reassigning them to non-patient care tasks; but that instead PeaceHealth placed them on indefinite unpaid leave, causing them lost wages and other harm.

PeaceHealth moved to dismiss Plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that indefinite unpaid leave *was* a reasonable accommodation in a situation where any accommodation that allowed unvaccinated caregivers to remain on the job unduly burdened the organization by increasing risk to its patients amidst a deadly pandemic. This argument might ultimately succeed at a later stage of this litigation. But whether a potential accommodation imposes undue hardship is an affirmative defense for which PeaceHealth carries the burden of proof, and only in rare circumstances can a defendant prevail on such a defense in a Rule 12(b)(6) motion, where the Court is required to accept the Plaintiffs' factual allegations as true and draw all inferences in their favor. In this case, granting PeaceHealth's motion to dismiss Plaintiffs' religious accommodation claims would require a chain of inferences in PeaceHealth's favor that are impermissible in this posture.

Plaintiffs assert other claims that fail to state a plausible basis for relief, and their claims against the individual defendants must be dismissed because they are not supported by sufficient factual allegations. Other claims brought for the first time in Plaintiffs' amended complaint (Dkt. 29) must be the subject of a separate motion if PeaceHealth seeks their dismissal. For these reasons, as explained further below, the Court GRANTS in part and DENIES in part PeaceHealth's motion to dismiss (Dkt. 17).

1

## II.    BACKGROUND

2
This case arises out of Plaintiffs' requests for accommodations for their religious

3
objections to PeaceHealth's COVID-19 vaccination mandate. PeaceHealth is a 501(c)(3)

4
Christian non-profit healthcare organization. Dkt. 29 ¶¶ 4–5. Individually named Defendants Liz

5
Dunne; Richard DeCarlo; Steve Glenn; Sarah Ness; Scott Foster, MD; Michelle James, RN;

6
Doug Koekkoek, MD; and Charles Prosper, MSPT, MBA are PeaceHealth officers. *Id.* ¶¶ 6–13.

7
Plaintiffs are 50 individuals who worked in PeaceHealth facilities as nurses, medical

8
professionals, and engineers, among other positions. *Id.* ¶¶ 14–63. Plaintiffs have filed this case

9
jointly but no longer seek to proceed as a class. *See generally* Dkt. 29 (omitting class allegations

10
contained in the original complaint at Dkt. 1 ¶¶ 90–99). Because the Court is considering a

11
motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the following facts are those

12
alleged in the amended complaint, Dkt. 29, which must be taken as true and construed in the

13
light most favorable to Plaintiffs. *See Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of*

14
*Am.*, 768 F.3d 938, 945 (9th Cir. 2014).

15
On August 3, 2021, PeaceHealth announced that it would require all caregivers to receive

16
full vaccination against COVID-19. Dkt. 29 ¶ 102 (citing *PeaceHealth Requires COVID-19*

17
*Vaccination*, PeaceHealth (Aug. 3, 2021), https://www.peacehealth.org/news/2021-08-

18
03/peacehealth-requires-covid-19-vaccination?print=true/ ("PeaceHealth announced that starting

19
August 31, 2021, all caregivers will be required to be vaccinated against COVID-19 or submit a

20
qualifying medical exemption.")).[1] Plaintiffs acknowledge PeaceHealth's rationale behind the

21
mandate: "[O]ur primary ethical decision is to keep our patients safe." *Id.* ¶ 106 (citing Azar,

22

---

23
[1] The Court can consider a document not physically attached to the complaint if the parties do
not contest its authenticity and the plaintiff necessarily relies on it. *Branch v. Tunnell*, 14 F.3d
449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307

24
F.3d 1119 (9th Cir. 2002).

Kellee, *PeaceHealth in SW Washington puts hundreds on leave who aren't vaccinated*, Komo News (Sept. 3, 2021), https://komonews.com/news/local/peacehealth-in-sw-washington-puts-hundreds-on-leave-who-arent-vaccinated/). According to PeaceHealth's press release, exempt individuals would "be subject to regular COVID-19 testing, as well as additional masking, potential reassignment to non-patient care settings, and other safety protocols." *Id.* ¶ 115 (quoting *PeaceHealth Requires COVID-19 Vaccination*, *supra*).

Although PeaceHealth did not mention religious accommodations when announcing the vaccination mandate, *Id.* ¶ 114 (citing *PeaceHealth Requires COVID-19 Vaccination*, *supra*), it accepted accommodation requests, *Id.* ¶ 121. PeaceHealth required those seeking religious accommodation to submit a letter of request before September 1, 2021. *Id.*

Shortly after PeaceHealth announced its vaccination mandate, Washington State Governor Jay Inslee issued Proclamation 21-14 (with amendments, "the Proclamation") requiring all healthcare workers in Washington to be fully vaccinated by October 18, 2021. *Id.* ¶ 107. The Proclamation allowed employers to provide religious accommodations unless doing so would cause undue hardship, consistent with the requirements of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Washington Law Against Discrimination ("the WLAD"). Proclamation No. 21-14.1(2)(a) (Aug. 9, 2021). PeaceHealth required employees requesting a religious accommodation to complete a form, in addition to the letter of request, by the state vaccination deadline of October 18, 2021. Dkt. 29 ¶¶ 122–23.

Plaintiffs each applied for religious accommodation. *Id.* ¶¶ 14–63.[2] Many Plaintiffs requested accommodations involving the use of Personal Protective Equipment ("PPE"), *see, e.g.*, Dkt. 29-3 ¶ 12 ("As part of my request, I was willing to continue wearing N95 mask, Face

---

[2] One of the Plaintiffs, Amber Schaeffer, only applied for medical exemption. *See generally* Dkt. 29-37.

shield, gloves, and an isolation gown"), which they allege PeaceHealth employees used to prevent the spread of COVID-19 "without incident" before PeaceHealth commenced the vaccination mandate. Dkt. 29 ¶¶ 43, 48. Some Plaintiffs also requested transfer to remote or non-patient-care roles, *see, e.g.*, Dkt. 29-22 ¶ 12 ("As part of my request, I was willing to continue wearing appropriate Personal Protective Equipment as required by the CDC, physical distancing, testing, reassignment to a non-patient care area and remote work positions."). Although PeaceHealth granted Plaintiffs' requests for religious exemption from the vaccine requirement, PeaceHealth denied their requested accommodations. Dkt. 29 ¶¶ 14–63. PeaceHealth allowed Plaintiffs and other unvaccinated staff with religious or medical exemptions to exhaust their paid time off before placing them on unpaid administrative leave. Dkt. 29 ¶¶ 125–26. Plaintiffs allege that, upon information and belief, PeaceHealth granted no religious accommodations other than paid time off followed by unpaid administrative leave. Dkt. 29 ¶¶ 125–26.

Plaintiffs filed this action on December 12, 2022. Dkt. 1. Defendants moved to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6). Dkt. 17. Plaintiffs filed a response along with an amended complaint. Dkt. 26, 29. In the amended complaint, Plaintiffs added new plaintiffs, factual allegations, and claims for relief for disparate treatment, disparate impact, and hostile work environment, each under Title VII and the WLAD. *See generally* Dkt. 29. Plaintiffs also removed the class allegations and voluntarily withdrew their Emergency Use Authorization Statute claim. *See generally id.* Defendants replied. Dkt. 32.

On June 29, 2023, after the motion was fully briefed, the U.S. Supreme Court decided *Groff v. DeJoy*, 600 U.S. 447, 470 (2023), which clarified the undue hardship standard for religious accommodation claims. The parties filed supplemental briefing regarding the effect of

*Groff* on the pending motion to dismiss. Dkt. 39, 40, 41, 42.[3] On August 31, 2023, the case was transferred to the undersigned judge.

### III.     DISCUSSION

#### A.     Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Rule 12(b)(6) motions may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation omitted).

To survive a Rule 12(b)(6) motion, the complaint "does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, but "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

---

[3] The Court acknowledges that Defendants' supplemental brief was over the word limit of 4,200 words set forth in LCR 7(e)(2). Plaintiffs requested that the Court strike the entire brief or any portion beyond the word limit. Defendants subsequently filed a praecipe with modifications to reduce the word count of the supplemental brief to 4,199 words. Dkt. 41. The Court accepts Defendants' praecipe and denies Plaintiffs' request to strike Defendants' supplemental brief.

elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations omitted).

The Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Tr.*, 768 F.3d at 945. But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

The filing of an amended complaint generally moots a pending motion to dismiss unless the amended complaint is substantially identical to the original complaint. *Oliver v. Alcoa, Inc.*, No. C16-0741JLR, 2016 WL 4734310, at *2 n.3 (W.D. Wash. Sept. 12, 2016); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992), *as amended* (May 22, 1992) ("[A]n amended pleading supersedes the original pleading."). An amended complaint may be substantially identical to the original complaint even if it asserts an additional cause of action. *See Oliver*, 2016 WL 4734310, at *2 n.3. "[D]efendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending." 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1476 (3d ed. 1998) (Jul. 7, 2023 Update). Where the new pleading contains some of the same defects raised in the original motion, "the court simply may consider the motion as being addressed to the amended pleading." *Id.*

### B.     First Claim for Relief: Failure to Accommodate

In the amended complaint, Plaintiffs claim Defendants failed to accommodate their religious beliefs in violation of Title VII, 42 U.S.C. §§ 2000e–e-17, and the WLAD, RCW 49.60. Dkt. 29 ¶¶ 164–70. Because this claim is substantially identical to the religious discrimination claim in the original complaint, the Court considers the motion to dismiss as addressed to the

failure-to-accommodate claim in the amended complaint.[4] *See Oliver*, 2016 WL 4734310, at *2 n.3.

Defendants argue that Plaintiffs' failure-to-accommodate claim should be dismissed. Dkt. 17 at 3–11; Dkt. 32 at 3–15. Defendants assert that unpaid administrative leave is a reasonable accommodation, and because the vaccines provide at least *some* safety benefit, any other accommodation would cause undue hardship. Dkt. 17 at 6–7, 10.

Plaintiffs argue that indefinite unpaid administrative leave constitutes an adverse employment action and is not a reasonable accommodation. Dkt. 26 at 6. Plaintiffs contend that PeaceHealth could have provided accommodations that would not have imposed undue hardship, such as masking or allowing exempt employees to fill alternative positions. *Id.* at 7–8. Further, Plaintiffs argue that Defendants were required to but did not engage in an interactive process with Plaintiffs. *Id.* at 12.

Under Title VII, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of" that individual's religion. 42 U.S.C. § 2000e-2(a)(1). An employer must "reasonably accommodate" an employee's religious practice unless such accommodation would impose "undue hardship on the conduct of the employer's business." *Id.* § 2000e(j).

Under the WLAD, employers may not refuse to hire, discharge, bar from employment, or discriminate against in compensation or other terms of employment any person because of their religion. RCW § 49.60.180; *see Kumar v. Gate Gourmet, Inc.*, 325 P.3d 193, 203 (Wash. 2014)

---

[4] Plaintiffs modified the heading of their claim for religious discrimination to (1) state "Failure to Accommodate" instead of "Unlawful Discrimination" and (2) add reference to the WLAD. The claims are otherwise identical. Dkt. 29 ¶¶ 164–170.

(en banc). The WLAD creates a cause of action for failure to reasonably accommodate an employee's religious practices. *Kumar*, 325 P.3d at 203. To plead a WLAD failure-to-accommodate claim, Plaintiffs must plausibly allege substantially the same elements as a Title VII failure-to-accommodate claim. *See id*. Accordingly, the Court analyzes the state and federal claims together.

To successfully plead a Title VII failure-to-accommodate claim, Plaintiffs "must plausibly allege that (1) [they] had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) [they] informed [their] employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected [them] to an adverse employment action because of [their] inability to fulfill the job requirement." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004). "Once an employee establishes a prima facie case of failure to accommodate religion, the burden shifts to the employer to show 'either that it initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship.'" *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1224 (9th Cir. 2023) (quoting *Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 681 (9th Cir. 1998)).

Defendants do not challenge the sincerity of Plaintiffs' asserted religious beliefs or that those beliefs are the reason Plaintiffs refuse vaccination. Nor do they dispute that Plaintiffs were placed on unpaid administrative leave because they refused vaccination based on their religious objections. Rather, Defendants dispute Plaintiffs' contention that unpaid administrative leave constitutes an adverse employment action, Dkt. 32 at 5, and argue that Plaintiffs' failure-to-accommodate claim should be dismissed because (1) unpaid administrative leave was a reasonable accommodation, and (2) any other accommodation would have imposed undue hardship on PeaceHealth. Dkt. 17 at 6–7, 10.

1.      *Plaintiffs have plausibly alleged facts showing that indefinite unpaid administrative leave was an adverse employment action and not a reasonable accommodation.*

An employer has met its Title VII obligation to reasonably accommodate an employee's religious practice "when it demonstrates that it has offered a reasonable accommodation to the employee." *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986).

 Defendants analogize this case to *Ansonia*, in which the Supreme Court held that a policy requiring employees to take three days of unpaid leave to observe religious holy days was a reasonable accommodation unless the employer provided paid leave for all non-religious purposes. Dkt. 17 at 6; *Ansonia*, 479 U.S. at 70–71. The Supreme Court observed that unpaid leave was a reasonable accommodation because it "eliminate[d] the conflict between employment requirements and religious practices" and "has no direct effect upon either employment opportunities or job status." *Ansonia*, 479 U.S. at 70–71 (internal quotations omitted).

But here, as Plaintiffs argue, *indefinite* unpaid leave does not so clearly eliminate the employment-religion conflict. Dkt. 26 at 9. The employment consequences of Plaintiffs' adherence to religious practices are substantially greater and materially different than the consequences of taking three days of unpaid leave in *Ansonia*. Although the Supreme Court has declined to incorporate all case law interpreting the Americans with Disabilities Act into the analysis of religious accommodations under Title VII, *see Groff*, 600 U.S. at 471, it is often instructive, and both this district and the Ninth Circuit have observed that "[t]he fact that unpaid leave may, in certain circumstances and where requested, constitute a reasonable accommodation does not mean that it cannot also be an adverse action, particularly where the employee is placed on unpaid leave involuntarily." *Steenmeyer v. Boeing Co.*, 92 F. Supp. 3d 1024, 1031 (W.D. Wash. 2015); *see also Dawson v. Akal Sec. Inc.*, 660 F. App'x 504, 506 (9th Cir. 2016)

(unpublished) (holding that involuntary unpaid leave may be an adverse employment action) (citing *Steenmeyer*, 92 F. Supp. 3d at 1031).

Further, Plaintiffs allege that PeaceHealth could have reasonably accommodated their religious practices by transferring them to other positions or allowing them to use additional protective equipment and other measures. Although Title VII "directs that any reasonable accommodation by the employer is sufficient to meet its accommodation obligation," *Ansonia*, 479 U.S. at 68, the availability of options that would allow the employee to keep working may affect the reasonableness of an option that would not. *See Mois v. Wynn Las Vegas LLC*, 715 F. App'x 600, 601 (9th Cir. 2017) (unpublished) (holding that unpaid leave was not a reasonable accommodation under ADA where light duty work was an option).

Taking these allegations as true, Plaintiffs have plausibly alleged that indefinite unpaid leave was an adverse employment action and not a reasonable accommodation.

> 2.    *Defendants cannot prove the affirmative defense of undue hardship on the face of Plaintiffs' complaint.*

An employer is not required to reasonably accommodate an employee's religious practice if doing so would impose "undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). To establish that a particular accommodation would impose undue hardship, "an employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Groff*, 600 U.S. at 470.[5] Where an employer determines a particular accommodation request would cause undue hardship, the employer must consider alternative accommodation options. *Id.* at 473.

---

[5] Prior to *Groff*, lower courts applied a "more than . . . *de minimis*" standard to determine whether an accommodation would cause undue hardship. *See, e.g., Balint v. Carson City*, 180 F.3d 1047, 1053–54 (9th Cir. 1999) (citing *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977)). In *Groff*, the Supreme Court clarified that this standard was based on an erroneous reading of *Hardison*. *Groff*, 600 U.S. at 454 (citing *Hardison*, 432 U.S. at 84).

Courts must "take[] into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of [an] employer." *Id.* at 470–71 (internal quotations omitted). "What constitutes undue hardship must be determined within the particular factual context of each case." *Balint*, 180 F.3d at 1054; *see also Groff*, 600 U.S. at 473 (describing undue hardship as a "context-specific standard"). Where an employer determines a particular accommodation request would cause undue hardship, the employer must consider alternative accommodation options. *Groff*, 600 U.S. at 473.

Because "[u]ndue hardship is an affirmative defense," Rule 12(b)(6) "dismissal on that ground is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint or in any judicially noticeable materials.'" *Bolden-Hardge*, 63 F.4th at 1224 (internal quotation marks and citations omitted).

Defendants argue that any accommodation other than unpaid administrative leave would have caused undue hardship. Dkt. 17 at 7. Defendants assert that "[t]he burden imposed by Plaintiffs' requested accommodation is well beyond '*de minimis*' and is consistent with *Groff*'s clarification of the undue hardship standard." Dkt. 39 at 6.

Defendants make two arguments as to how undue hardship may be determined from the face of the amended complaint. First, Defendants argue that undue hardship can be determined because accommodations would have forced non-compliance with the state and federal vaccine mandates for healthcare workers. Dkt. 17 at 11; Dkt. 39 at 9. But both mandates allowed employers to grant religious accommodations. The Proclamation provided that, "Health Care Providers are not required to get vaccinated against COVID-19 under this Order if they are unable to do so because of a disability or if the requirement to do so conflicts with their sincerely held religious beliefs," and employers were allowed to provide accommodations for such

exemptions (though they were not required to if doing so caused undue hardship). Proclamation No. 21-14.1(2)(a). The federal vaccination mandate for employees of Medicare and Medicaid service providers, promulgated by the Centers for Medicare & Medicaid Services of the Department of Health and Human Services ("CMS"), "recognize[d] that, in some circumstances, employers may be required by law to offer accommodations for some individual staff members." Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination, 86 Fed. Reg. 61,555, 61,572 (Nov. 5, 2021).[6] The regulation specifically cited Title VII and noted that some people may be exempt from vaccination requirements due to religious beliefs. *Id.* Accordingly, providing accommodations would be consistent with the state and federal mandates.

Defendants point out that the CMS regulation further noted that "in granting such exemptions or accommodations, employers must ensure that they minimize the risk of transmission of COVID-19 to at-risk individuals, in keeping with their obligation to protect the health and safety of patients." Dkt. 32 at 14 (citing Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination, 86 Fed. Reg. at 61,572). However, Defendants have not shown, at this stage, that any accommodation would have required them to violate this obligation.

Second, Defendants argue that Plaintiffs' requested accommodations would "indisputably create" multiple safety risks, "including the risk of spreading COVID-19 to other employees, medically vulnerable populations, and the public generally." Dkt. 39 at 4. Defendants argue that although Plaintiffs allege the vaccine did not stop transmission, undue hardship can be

---

[6] On June 5, 2023, CMS issued a new regulation that ended its vaccination requirement. 88 Fed. Reg. 36,485 (June 5, 2023).

determined from documents Plaintiffs attached to or referenced in their pleadings.[7] Dkt. 32 at

10–11. Specifically, Defendants ask the Court to consider two CDC reports, dated July 27 and

July 30, 2021. *Id.* at 12.

Under *Branch*, 14 F.3d at 454, the Court can consider a document not physically attached

to the complaint if the parties do not contest its authenticity and the plaintiff necessarily relies on

it. *See also Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). Neither party questions the

authenticity of the CDC reports and Plaintiffs rely on them to allege that vaccinated people can

transmit COVID-19. *See* Dkt. 29 ¶¶ 91–93, 156.

Plaintiffs quote the July 27, 2021 report to contend the vaccine did not prevent

transmission: "By July 27, 2021[ ]the CDC acknowledged that 'preliminary evidence suggests

that fully vaccinated people who do become infected with the Delta variant can spread the virus

to others.'" *Id.* ¶ 156 (quoting *COVID-19 Interim Public Health Recommendations for Fully*

*Vaccinated People*, Ctrs. for Disease Control & Prev. (July 27, 2021)). However, Defendants

note that Plaintiffs omit parts of the report in which the CDC discusses the vaccine's efficacy:

> Currently authorized vaccines in the United States are highly effective at protecting
> vaccinated people against symptomatic and severe COVID-19. Fully vaccinated
> people are less likely to become infected and, if infected, to develop symptoms of
> COVID-19. They are at substantially reduced risk of severe illness and death from
> COVID-19 compared with unvaccinated people.

Dkt. 32 at 12 (quoting *COVID-19 Interim Public Health Recommendations for Fully Vaccinated*

*People*, *supra*).

The Court agrees that Plaintiffs' quotation is misleading without context. As Defendants

point out, the July 27, 2021 report states that vaccinated people become infected at lower rates.

---

[7] Defendants ask the Court to consider materials attached to and referenced in the original
complaint, but because "an amended pleading supersedes the original pleading," the Court
considers only those materials attached to or referenced in the amended complaint. *Ferdik*, 963
F.2d at 1262.

*Id.* (quoting *COVID-19 Interim Public Health Recommendations for Fully Vaccinated People*, *supra*). Thus, when considered in full, the report indicates that the overall rate of COVID-19 transmission decreases even if infected vaccinated individuals still transmit the virus at similar rates to infected unvaccinated individuals. *COVID-19 Interim Public Health Recommendations for Fully Vaccinated People*, *supra*.

Plaintiffs also cite the July 30, 2021 report's findings that "the Delta infection resulted in similarly high SARS-CoV-2 viral loads in vaccinated and unvaccinated people." Dkt. 29 ¶ 91 (citing Catherine M. Brown et al., *Outbreak of SARS-CoV-2 Infections, Including COVID-19 Vaccine Breakthrough Infections, Associated with Large Public Gatherings — Barnstable County, Massachusetts, July 2021*, 70 Morbidity & Mortality Wkly. Rep. 1059 (2021)). This citation is also misleading. As Defendants point out, "Plaintiffs ignore the conclusion of that same report: 'vaccination is the most important strategy to prevent severe illness and death.'" Dkt. 32 at 12 (citing Brown, *supra*, at 1059). The report states that "the assay used in this investigation was not validated to provide quantitative results," factors other than viral load may impact the findings, and that the findings "*might*" indicate that viral loads in vaccinated and unvaccinated individuals are similar. Brown, *supra*, at 1061 (emphasis added). The report also recommends that people take precautions *in addition to* the vaccine, not in lieu of it. *Id.* Nowhere does it suggest that such precautions without vaccination are just as effective in preventing transmission as they are when paired with vaccination. *See generally id.*

Defendants also ask the Court to take judicial notice of the CMS regulation as evidence of scientific consensus regarding the efficacy of vaccination. Dkt. 42 at 4–5. The regulation states that "[h]ealth care staff who remain unvaccinated may also pose a direct threat to patient, resident, workplace, family, and community safety and population health." Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination, 86 Fed. Reg. at 61,585.

The regulation addressed transmission rates: "Emerging evidence also suggests that vaccinated people who become infected with Delta have potential to be less infectious than infected unvaccinated people, thus decreasing transmission risk." *Id.* at 61,586. The regulation explained why CMS decided to mandate the vaccine:

> The agency has considered other alternatives (for example, relying entirely on measures such as voluntary vaccination, source control alone, and social distancing) and has concluded that the mandate established by this rule is the minimum regulatory action necessary to achieve the objectives of the statute. Given the contagion rates of the existing strains of coronavirus and their disproportionate impacts on Medicare and Medicaid beneficiaries, we believe that vaccination of almost all staff of covered providers and suppliers is necessary to promote and protect patient health and safety.

*Id.* at 61,613. Defendants argue that these statements demonstrate that PeaceHealth complied with the CMS regulation and scientific consensus, and in turn that unpaid administrative leave was the only accommodation that would not impose undue hardship. Dkt. 42 at 5.

In their supplemental briefing, Defendants also cite the Supreme Court's statements in *Biden v. Missouri*, 595 U.S. 87, 91–92 (2022). Dkt. 39 at 5. Defendants point out that the Supreme Court, in upholding the Biden Administration's authority to issue the CMS regulation, noted the regulation was based on data showing that COVID-19 "can spread rapidly among healthcare workers and from them to patients" and agency findings regarding the risks imposed by unvaccinated healthcare staff in healthcare facilities. *Id.* (quoting *Biden*, 595 U.S. at 91–92). Defendants assert that these determinations "represent[] the scientific consensus at the time of PeaceHealth's enactment of its mandate." *Id.*

Defendants' arguments persuasively demonstrate that, even based on Plaintiffs' allegations and documents incorporated by reference into Plaintiffs' amended complaint, the scientific consensus at the time PeaceHealth enacted its mandate showed that vaccination of healthcare workers (and increasing vaccination rates through mandates) improved patient safety.

Nothing in this order turns on questioning that consensus. But that is not the same as proving, as a matter of law, that any accommodation other than unpaid leave for any employee who held sincere religious objections to receiving the vaccine created an undue hardship.

Defendants' argument ignores that the state and federal mandates, which were based on this same scientific consensus, expressly allowed for religious accommodations. The Supreme Court cited those allowances in upholding the CMS regulation. *See Biden*, 595 U.S. at 89 ("[P]articipating facilities must ensure that their staff—unless exempt for medical or religious reasons—are vaccinated against COVID-19."); *id.* at 91 ("The rule requires providers to offer medical and religious exemptions . . . ."). The CMS regulation itself, in apparent reference to the exemptions, explains its conclusion that "vaccination of *almost all* staff of covered providers and suppliers is necessary to promote and protect patient health and safety." Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination, 86 Fed. Reg. at 61,663 (emphasis added).

As *Groff* explains, the undue hardship analysis is a "fact-specific inquiry" that considers whether "a burden is substantial in the overall context of an employer's business," 600 U.S. at 468, and "takes into account all relevant factors . . . including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer," *id.* at 470–71 (internal quotation marks omitted). The Court is not persuaded that, as a matter of law, this fact-specific inquiry is satisfied by pointing to the scientific consensus that justified vaccine mandates *with religious exemptions* to prove in every circumstance that any religious accommodation beyond indefinite unpaid leave was an undue hardship. Such an interpretation would render the availability of religious accommodations meaningless, as it makes little practical difference to an employee losing their income whether their employer denies their

accommodation request and fires them or "grants" their accommodation request but places them on indefinite unpaid leave.

Moreover, Defendants' argument does not address the allegations of at least some Plaintiffs that they could have been accommodated through transfer to non-patient care positions. *See, e.g.*, Dkt. 29-22 ¶ 12; *see generally* Dkt. 17, 32. Nor does it address Plaintiffs' allegation that, in its original press release announcing the mandate, PeaceHealth suggested that other reasonable accommodations were possible, stating that exempted individuals would "be subject to regular COVID-19 testing, as well as additional masking, potential reassignment to non-patient care settings, and other safety protocols." Dkt. 29 ¶ 115 (quoting *PeaceHealth Requires COVID-19 Vaccination*, *supra*.)

Defendants cite several cases in which courts denied preliminary injunctive relief based on an undue hardship analysis of similar failure-to-accommodate claims about COVID-19 vaccine mandates. Dkt. 32 at 6. Those cases, however, were based on the preliminary injunction standard of "likelihood of success on the merits," which allowed those courts to consider evidence. *See Barrington v. United Airlines, Inc.*, 566 F. Supp. 3d 1102, 1110 (D. Colo. 2021); *Together Emps. v. Mass Gen. Brigham Inc.*, 573 F. Supp. 3d 412, 441 (D. Mass. 2021), *aff'd*, 32 F.4th 82 (1st Cir. 2022); *O'Hailpin v. Hawaiian Airlines, Inc.*, 583 F. Supp. 3d 1294, 1310 (D. Haw. 2022), *appeal dismissed*, No. 22-15215, 2022 WL 3339844 (9th Cir. July 13, 2022); *Anderson v. United Airlines, Inc.*, 577 F. Supp. 3d 1324, 1333 (M.D. Fla. 2021); *Leigh v. Artis-Naples, Inc.*, No. 2:22-CV-606-JLB-NPM, 2022 WL 18027780, at *11 (M.D. Fla. Dec. 30, 2022); *Creger v. United Launch All. LLC*, 571 F. Supp. 3d 1256, 1264 (N.D. Ala. 2021). In ruling on a motion to dismiss, the Court may not weigh the evidence but instead must take as true the factual allegations in Plaintiffs' amended complaint and draw all inferences in their favor. *Iqbal*, 556 U.S. at 678–79.

Defendants also cite *Beuca v. Washington State University*, No. 2:23-CV-0069-TOR, 2023 WL 3575503 (E.D. Wash. May 19, 2023), in which the U.S. District Court for the Eastern District of Washington granted a motion to dismiss a claim for failure to accommodate a medical resident's religious objection to receiving the COVID-19 vaccine. Dkt. 39 at 7. The Court reasoned that increased risk of COVID-19 exposure was sufficient to establish undue hardship such that "[n]o accommodation was possible." *Beuca*, 2023 WL 3575503, at *3.

However, the U.S. District Court for the District of Oregon has twice denied motions to dismiss similar failure-to-accommodate claims. *Trusov v. Or. Health & Sci. Univ.*, No. 3:23-CV-77-SI, 2023 WL 6147251 (D. Or. Sept. 20, 2023); *MacDonald v. Or. Health & Sci. Univ.*, No. 3:22-CV-01942-IM, 2023 WL 5529959 (D. Or. Aug. 28, 2023). In both cases, registered nurses were denied accommodations for their religious objections to complying with Oregon Health & Science University's COVID-19 vaccination policy. In *Trusov*, the court determined that dismissal based on an affirmative defense raised in a Rule 12(b)(6) motion was not proper because the "Plaintiff's complaint does not *itself* establish the affirmative defense of undue hardship." 2023 WL 6147251, at *7.

In *MacDonald*, the court also emphasized the limited Rule 12(b)(6) standard of review when declining to dismiss the plaintiff's claims on undue hardship grounds. 2023 WL 5529959, at *5–*8. The *MacDonald* court determined that it could not "properly consider the extrinsic evidence on which Defendants rely to show either that there were no other viable accommodations to Plaintiff's vaccination, or that any accommodations would have created an undue hardship consistent with *Groff*." *Id.* at *7.

The Court finds *Trusov* and *MacDonald* more persuasive than *Beuca*. Further, here, as in *Trusov* and *MacDonald*, the record is limited. The amended complaint, including the materials cited within it, is not sufficient to establish undue hardship; a ruling for Defendants would

require the Court to draw a number of inferences in Defendants' favor as to what evidence they

relied upon in considering accommodation requests and how they determined that no other

reasonable accommodations were possible. As the *MacDonald* court noted, a standard of review

that allows for the consideration of evidence may yield a different outcome:

> On a more robust record, Defendants may very well be able to meet their burden to show that Defendants reasonably relied on the most up-to-date available information in formulating their vaccine policy, or that the efficacy of the COVID-19 vaccine was such that any other possible accommodation would have put the vulnerable patients with whom Plaintiff interacted daily, as well as Plaintiff's coworkers, at risk.

*Id.* At this stage, with the limited record before the Court, Defendants have not met their burden.

### 3. Plaintiff Amber Schaeffer's religious accommodation claim is dismissed.

Because there are no class allegations, the Court must consider each Plaintiff's claim

individually. One individual Plaintiff, Amber Schaeffer, made no allegation that she sought

religious accommodation from PeaceHealth's COVID-19 vaccine policy, instead alleging only

that she sought a medical exemption. *See generally* Dkt. 29-37. The amended complaint says that

all Plaintiffs chose not to receive the vaccine because of their sincerely held religious beliefs.

Dkt. 29 ¶ 160 ("Plaintiffs all have sincerely held religious beliefs that preclude[e] each from

complying with PeaceHealth's Mandatory COVID-19 Vaccination Policy as each vaccine has a

connection with the use of cell lines of aborted fetuses . . . ."). But those allegations contradict

the individual allegations accompanied by a sworn declaration. This claim is therefore dismissed

for Plaintiff Amber Schaeffer, who has not alleged she sought religious accommodation.

### C. Second Claim for Relief: Disparate Treatment

Plaintiffs' disparate treatment claim under Title VII and the WLAD is not substantially

identical to a claim in the original complaint. Construing the factual allegations in the light most

favorable to Plaintiffs, it appears to be a new claim that placing Plaintiffs on administrative leave

was motivated by animosity toward their religious beliefs. *See* Dkt. 29 ¶¶ 171–175. If

Defendants seek dismissal of the disparate treatment claim, they must address the claim in a new

motion to dismiss. *See Oliver*, 2016 WL 4734310, at *2 n.3. The Court will allow PeaceHealth

30 days after entry of this order to file a responsive pleading or new motion directed at the

disparate treatment claim asserted for the first time in the amended complaint.

### D.     Third Claim for Relief: Disparate Impact

Plaintiffs' disparate impact claim under Title VII and the WLAD is a new claim that is

not substantially identical to any claim in the original complaint. If Defendants seek dismissal of

the disparate impact claim, they must address the claim in a new motion to dismiss. *See id.* The

Court will allow PeaceHealth 30 days after entry of this order to file a responsive pleading or

new motion directed at the disparate impact claim asserted for the first time in the amended

complaint.

### E.     Fourth Claim for Relief: Unlawful Employment Discrimination

Plaintiffs' unlawful employment discrimination claim under the WLAD is duplicative of

their first claim for relief for failure to accommodate Plaintiffs' religious beliefs. Though

Plaintiffs will not be able to maintain two separate duplicative claims, at this stage, consistent

with the analysis of Plaintiffs' failure-to-accommodate claim, the Court dismisses the unlawful

employment discrimination claim for Amber Schaeffer but declines to dismiss the claim for any

other Plaintiff.

### F.     Fifth Claim for Relief: Wage Theft

Because Plaintiffs' wage theft claim is substantially identical in the original and amended

complaints, the Court will consider the claim here. Plaintiffs assert a claim for wage theft in

contravention of RCW 49.48. Plaintiffs argue that they are entitled to repayment of their wages,

including their pension rights. Dkt. 29 ¶¶ 188–90. Defendants argue that Plaintiffs' vested

pension rights are fully protected under 29 U.S.C. § 1053 ("ERISA") and that Plaintiffs do not allege "how PeaceHealth has somehow defeased any vested pension right contrary to ERISA." Dkt. 17 at 13. Defendants further argue that RCW 49.48.010 does not apply to Plaintiffs because they are current PeaceHealth employees and RCW 49.48.010 only applies in the context of termination of employment, and not the context of unpaid administrative leave. *Id.* at 14. Defendants also assert that this claim is redundant because it does not raise facts that would support the alleged deprivation of wages and vested pension rights other than as damages resulting from the religious discrimination claims. *Id.* Plaintiffs do not respond to these arguments.

Under the first paragraph of RCW 49.48.010 (2020) (amended 2022), "[w]hen any employee shall cease to work for an employer, whether by discharge or by voluntary withdrawal, the wages due him or her on account of his or her employment shall be paid to him or her at the end of the established pay period." The second paragraph provides: "It shall be unlawful for any employer to withhold or divert any portion of an employee's wages unless the deduction is" required by law, agreed to by employer and employee, or for medical services. RCW 49.48.010.

Plaintiffs have not plausibly alleged a violation of the statute. While lost wages may be an element of the damages for Plaintiffs' employment claims, Plaintiffs have not alleged that they have been unlawfully deprived of wages other than as damages resulting from other claims. To assert a plausible wage theft claim, Plaintiffs would need to assert a separate cause of action alleging, for example, that PeaceHealth did not pay Plaintiffs for all hours worked before they were placed on leave or illegally deducted an amount from their paychecks.

### G.     Sixth Claim for Relief: Arbitrary and Capricious Government Action

Plaintiffs assert that Defendants violated the right to be free from arbitrary and capricious government action. Dkt. 29 ¶¶ 191–202. Plaintiffs allege that Defendants' conduct constitutes

state action because PeaceHealth took on a quintessential government role of protecting the public and worked with the state government by agreeing to be a test case for Governor Inslee's statewide vaccination mandate. *Id.* ¶¶ 192–93. Plaintiffs allege that PeaceHealth's vaccine mandate was arbitrary and capricious because natural immunity is at least as effective as vaccine immunity, vaccine immunity wanes over time, and the COVID-19 vaccine does not prevent infection or transmission. *Id.* ¶¶ 198–200. Plaintiffs further argue that continuing the vaccine mandate beyond the State of Washington's COVID-19 emergency is arbitrary and capricious. *Id.* ¶ 201.

Defendants respond that Plaintiffs have not alleged facts sufficient to show that PeaceHealth worked with Governor Inslee or was otherwise a state actor. Dkt. 17 at 14. Defendants assert that PeaceHealth is a private healthcare provider that acted independently from the state government. *Id.* at 17. Plaintiffs do not respond to these arguments. *See generally* Dkt. 26. Defendants' arguments address only the question of whether PeaceHealth was a government actor and not the question of whether, if PeaceHealth was a government actor, its actions were arbitrary and capricious. *See* Dkt. 17 at 14–17.

Courts may treat the action of a private entity as an act of the state government "if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). The determination of whether a private entity acts under color of state law "is a matter of normative judgment, and the criteria lack rigid simplicity." *Id.* at 295–96.

Courts "start with the presumption that private conduct does not constitute governmental action." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999). The Ninth

Circuit has "recognized at least four different general tests that may aid us in identifying state action: '(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus.'" *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747 (9th Cir. 2020) (quoting *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003)).

A private entity's compliance with a generally applicable statutory requirement, without more, is not sufficient to hold that private entity liable as a government actor. *Sutton*, 192 F.3d at 837–39. Accordingly, PeaceHealth's compliance with the federal and state COVID-19 mandates does not constitute state action.

Plaintiffs argue that PeaceHealth exercised a public function, because "PeaceHealth took on a quintessential government role by deciding it was on its shoulders to stop the spread of the virus in the community." Dkt. 29 ¶ 103. "The public function test is satisfied only on a showing that the function at issue is 'both traditionally and exclusively governmental.'" *Kirtley*, 326 F.3d at 1093 (quoting *Lee v. Katz*, 276 F.3d 550, 555 (9th Cir. 2002)). A public statement referencing a general concern for the broader community is not an "exclusively governmental" function and therefore does not demonstrate that PeaceHealth assumed a public function.

Plaintiffs allege that PeaceHealth worked with the State of Washington and Governor Inslee "by agreeing to be the testing ground for the Vaccine Mandate," and "agreeing to change their medical and religious accommodation regimes to align with those of the State of Washington." Dkt. 29 ¶ 193. These allegations are speculative, conclusory, and implausible; it is difficult to understand how PeaceHealth would have served as a useful testing ground given that PeaceHealth announced its mandate less than a week before Governor Inslee issued the Proclamation (applicable to all healthcare providers), with a vaccination deadline only six weeks before the Proclamation's. A court need not credit Plaintiffs' legal conclusions that are couched as factual allegations, and the Court may properly disregard Plaintiffs' speculative and

1    conclusory assertion that PeaceHealth's mandate was the result of coordination with

2    Washington's governor. *Iqbal*, 556 U.S. at 678–79.

3         Moreover, the alleged conduct does not satisfy the public function test, nor does it satisfy

4    the tests for joint action, government nexus, or governmental compulsion or coercion. A close

5    nexus exists where there is "a sufficiently close nexus between the state and the private actor so

6    that the action of the latter may be fairly treated as that of the State itself." *Rawson*, 975 F.3d at

7    748 (internal quotations omitted). Joint action exists "where the State has so far insinuated into a

8    position of interdependence with the [private party] that it was a joint participant in the

9    enterprise." *Id.* (internal quotations omitted). "Governmental compulsion or coercion may exist

10   where the State 'has exercised coercive power or has provided such significant encouragement,

11   either overt or covert, that the choice must in law be deemed to be that of the State.'" *Id.* (quoting

12   *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). Even taking Plaintiffs' allegations as true,

13   PeaceHealth's alleged conduct—agreeing with the State to serve as a test case and aligning their

14   accommodation policies with those of the State after Governor Inslee issued the Proclamation—

15   does not satisfy any of these tests. Plaintiffs do not plausibly allege that PeaceHealth is a

16   government actor.

17        **H.    Seventh Claim for Relief: Hostile Work Environment**

18        Plaintiffs' claim for hostile work environment is not substantially identical to any claim

19   in the original complaint. If Defendants seek to challenge this claim, they must move for

20   dismissal in a new motion. *See Oliver*, 2016 WL 4734310, at *2 n.3. The Court will allow

21   PeaceHealth 30 days after entry of this order to file a responsive pleading or new motion directed

22   at the hostile work environment claim asserted for the first time in the amended complaint.

23

24

### I.      Eighth Claim for Relief: Declaratory Relief

Plaintiffs request that the Court declare PeaceHealth's vaccination policy "unlawful, unconstitutional, and unenforceable." Dkt. 29 ¶ 219. Plaintiffs' claim for arbitrary and capricious government action is the only claim that challenges the policy itself, rather than the failure to provide reasonable religious accommodations. Because the Court dismisses that claim, the Court also dismisses Plaintiffs' request for declaratory relief.

### J.      Ninth Claim for Relief: Injunctive Relief

Plaintiffs request injunctive relief, but do not specify which conduct they seek to enjoin. *See* Dkt. 29 ¶¶ 220–24. Plaintiffs' request for injunctive relief is dismissed to the extent that Plaintiffs seek to enjoin the vaccination policy. Injunction of the policy is tied to Plaintiffs' sixth claim for arbitrary and capricious government, which the Court has dismissed. The Court does not dismiss Plaintiffs' request for injunctive relief to the extent they assert it with respect to Plaintiffs' individual reasonable accommodation claims.

### K.      Individual Defendants

Finally, in a case alleging the same claims against multiple defendants, there must be specific allegations explaining what each defendant allegedly did wrong, rather than general allegations asserted against them as a group. *Trusov*, 2023 WL 6147251, at *2; *see Evans v. Sherman*, 2020 WL 1923176, at *3 (E.D. Cal. Apr. 21, 2020) (noting that a plaintiff who "simply lumps all defendants together" makes it "impossible for the Court to draw the necessary connection between the actions or omissions" of the various defendants); *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 908 (N.D. Cal. 2018) ("Plaintiffs must identify what action each Defendant took that caused Plaintiffs' harm, without resort to generalized allegations against Defendants as a whole." (quotation marks and citation omitted)); *Wright v. City of Santa Cruz*, No. 13–cv–01230–BLF, 2014 WL 5830318, at *5 (N.D. Cal. Nov. 10, 2014) ("These

allegations are inadequate because they lump all defendants together and fail to allege the factual basis for each defendant's liability.").

Here, Plaintiffs have not asserted plausible factual allegations against any Defendant other than PeaceHealth. *See generally* Dkt. 29. Plaintiffs' only individual allegations are conclusory statements, which the Court need not accept as true. *Iqbal*, 556 U.S. at 678–79. Plaintiffs' statement that they will wait until discovery is complete "to determine whether individual defendant conduct gives rise to a claim for discrimination," Dkt. 26 at 2, is precisely what *Iqbal* cautioned against, *see* 556 U.S at 679 (noting that federal pleading requirements do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions").

### L.      Leave to Amend

The Court declines to grant Plaintiffs leave to amend their dismissed claims. When assessing the propriety of leave to amend, courts consider five factors: bad faith, undue delay, prejudice to the opposing party, futility, and prior amendment. *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011). Here, Plaintiffs already amended their pleading in response to the motion to dismiss. In doing so, they had an opportunity to cure the alleged defects. Moreover, amendment would be futile because the "underlying facts" do not "provide proper grounds for relief," and the Court cannot "conceive of facts that would render" Plaintiffs' dismissed claims "viable." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988) (internal quotations omitted); *see also Corinthian Colls.*, 655 F.3d at 995 ("[D]ismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment." (internal quotations omitted)). Accordingly, the Court will not grant Plaintiffs' leave to amend their dismissed claims.

### IV.      CONCLUSION

Therefore, it is hereby ORDERED that:

- Defendants' motion to dismiss is DENIED as to Plaintiffs' Failure to Accommodate and Unlawful Employment Discrimination claims against PeaceHealth, except for Plaintiff Amber Schaeffer's Failure to Accommodate and Unlawful Employment Discrimination claims, which are DISMISSED with prejudice.

- Defendants' motion to dismiss is GRANTED with prejudice as to Plaintiffs' Wage Theft, Arbitrary and Capricious Government Action, and Declaratory Relief claims.

- Defendants' motion to dismiss Plaintiffs' claim for Injunctive Relief is GRANTED with prejudice to the extent that Plaintiffs seek to enjoin the vaccination policy and DENIED to the extent that Plaintiffs seek injunctive relief with respect to their individual reasonable accommodation claims.

- Defendants' motion to dismiss is GRANTED as to all claims against all individually-named defendants. Defendants Liz Dunne; Richard DeCarlo; Steve Glenn; Sarah Ness; Scott Foster, MD; Michelle James, RN; Doug Koekkoek, MD; and Charles Prosper, MSPT, MBA are DISMISSED from this case with prejudice.

- The Court will allow PeaceHealth 30 days after entry of this order to file a responsive pleading or new motion directed at the Disparate Treatment, Disparate Impact, and Hostile Work Environment claims asserted for the first time in the amended complaint.

Dated this 9th day of November, 2023.

Tiffany M. Cartwright
United States District Court Judge